# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

MICAINE A. SEELEY,

          Plaintiff,

    v.                             Case No. 22-CV-272

COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,

          Defendant.

## DECISION AND ORDER

### 1. Introduction

Alleging he has been disabled since November 26, 2019 (Tr. 88), plaintiff Micaine A. Seeley seeks supplemental security income. After his application was denied initially (Tr. 328-38) and upon reconsideration (Tr. 339-50), a hearing was held before Administrative Law Judge (ALJ) Michele Kelley on February 9, 2021 (Tr. 109-38). On March 3, 2021, the ALJ issued a written decision concluding that Seeley was not disabled. (Tr. 85-104.) After the Appeals Council denied Seeley's request for review on January 31, 2022 (Tr. 1-4), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 5, 8) and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found, "The claimant has not engaged in substantial gainful activity since November 26, 2019, the application date." (Tr. 90.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Seeley has the following severe impairments: "depression; somatoform disorder; and mast cell activation syndrome/chronic inflammatory response syndrome." (Tr. 90.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set

forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that Seeley's impairments did not meet of medically equal a listing impairment. (Tr. 93.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Seeley has the RFC

> to lift, carry, push, and pull 25 pounds frequently and 50 pounds occasionally, is able to stand and/or walk about six hours in an eight-hour workday (with normal breaks), and is able to sit for about six hours in an eight-hour workday (with normal breaks; normal breaks defined as occurring every two hours with two breaks lasting at least 10 minutes and one break lasting at least 30 minutes). The claimant is never able to climb ladders, ropes, or scaffolds, is occasionally able to climb ramps and/or stairs, occasionally able to balance on narrow or slippery surfaces, and is occasionally able to stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to noise levels of 4 out of 5 and 5 out of 5 as defined in the DOT and SCO, must avoid concentrated exposure to excessive fumes, odors, dust, gases, and poor ventilation, and must have the option to wear shaded lenses or hat or visor. The claimant is able to understand, remember, and carry out simple tasks, and is able to maintain attention, concentration, persistence, and pace for such tasks for eight-hour workdays and 40-hour workweeks. The claimant is able to tolerate occasional interaction with supervisors, coworkers, and members of the public, and is able to tolerate usual work situations with no more than occasional changes in the routine work setting.

3

(Tr. 95.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. The ALJ concluded that Seeley has no past relevant work.

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering Seeley RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 102.)

Specifically, the ALJ found that Seeley could work as:

1. Routing Clerk, DOT 222.587-038, with a physical demand of light, a specific vocational preparation of two, and with approximately 53,000 jobs available in the national economy.

2. Merchandise Marker, DOT 209.587-034, with a physical demand of light, a specific vocational preparation of two, and with approximately 67,000 jobs available in the national economy.

3. Mail Clerk, DOT 209.687-026, with a physical demand of light, a specific vocational preparation of two, and with approximately 38,000 jobs available in the national economy.

(Tr. 103.) Therefore, Seeley was not disabled.

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

### 4. Analysis

Because Seeley is representing himself, the court broadly construes his briefs and will address any cogent argument it can discern. *See Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017). In his initial brief Seeley challenges many aspects of the ALJ's decision. Some of his arguments seem to be based on misunderstandings about the

nuances and technicalities of social security law and the scope of this court's authority to upset a final decision of the Commissioner. While his arguments are reasonable and understandable from a lay perspective, many are ultimately inconsequential to the legal question of whether he meets the criteria for disability under social security law.

For example, Seeley argues that the ALJ erred in finding that his impairments did not meet or medically equal a listing. (ECF No. 13 at 5.) The listings are a narrow means for establishing disability. One way to think of the listings is as a means for simplifying and expediting disability findings in clear cases. As such, they generally set a high standard for disability. Claimants routinely fail to meet or medically equal a listing but are nonetheless disabled. Although Seeley asserts that he meets the criteria of listings 12.04 and 12.15 (without specifically citing these numbers) (ECF No. 21 at 5-6), his assertions are not supported by citations to the record identifying medication evidence that demonstrates that he, in fact, meets or medically equals either listing. The ALJ adequately explained why Seeley did not meet any listing (Tr. 93-95), and the court cannot upset the ALJ's determination.

Seeley also argues that the ALJ erred when she identified "depression" as a severe impairment rather than "Major Depressive Disorder, Recurrent, Moderate," which Seeley states was his clinical diagnosis. (ECF No. 13 at 13.) But what matters is whether the ALJ fully accounts for the limitations resulting from all of a claimant's impairments, both those that are severe and those that are not. Seeley has failed to point to specific facts in

the record that demonstrate that the ALJ's assessment of his depression and the resulting symptoms was unsupported by substantial evidence.

Similarly, Seeley argues that the ALJ improperly listed somatoform disorder as a severe impairment. (ECF No. 13 at 16-21.) He argues that Thomas Brent Shields, Ph.D., improperly diagnosed him with somatoform disorder.

Given Shields's diagnosis, it was not error for the ALJ to identify somatoform disorder as a severe impairment. 20 C.F.R. §§ 416.920(c), 416.922. More importantly, from the perspective of a claimant seeking benefits, there is no harm in an ALJ finding additional severe impairments. *Cf. McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result"). Thus, the nature of Seeley's argument is unclear. A diagnosis of somatoform disorder is neither pejorative nor necessarily a suggestion that a person's symptoms are "all in his head." Rather, it is an acknowledgment that stress and anxiety over physical symptoms are disrupting the patient's life. *See* Cleveland Clinic, Somatic Symptom Disorder in Adults, https://my.clevelandclinic.org/health/diseases/17976-somatic-symptom-disorder-in -adults (August 30, 2022); American Psychiatric Association, What is Somatic Symptom Disorder?, https://www.psychiatry.org/patients-families/somatic-symptom-disorder/ what-is-somatic-symptom-disorder (August 31, 2022). There being neither an error nor

any plausible harm to Seeley as a result of the ALJ finding that somatoform disorder was a severe impairment, Seeley's argument does not entitle him to relief.

Seeley also argues that the ALJ erred by failing to identify chronic fatigue and post-traumatic stress disorder (ECF No. 13 at 9-13) as severe impairments. Provided an ALJ identifies at least one severe impairment, the failure to identify additional impairments as severe is usually harmless given that an ALJ must consider the combined effect of all the claimant's impairments, both severe and non-severe, when determining whether the claimant is disabled. 20 C.F.R. § 416.945(a)(2).

At step two, whether any impairment is severe is indeed a threshold issue. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012) (citing *Castile v. Astrue*, 617 F.3d 923, 927–28 (7th Cir. 2010)). As long as a claimant has at least one severe impairment, the analysis proceeds to step three. *Id.* Because the ALJ found that Seeley had other impairments that were severe, it was of no significance that Seeley's chronic fatigue was not deemed a severe impairment as well.

The ALJ discussed Seeley's chronic fatigue syndrome under SSR 14-1p and noted:

> available medical evidence contains minimal observations supporting a diagnosis of CFS, including minimal or no findings of palpably swollen or tender lymph nodes on physical examination, nonexudative pharyngitis, persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points, etc. Rather, there is a single medical record from Craig Davis, M.D., indicating the presence of tender points, but only on the claimant's back and only on one occasion (Exhibit 7F/1-10). Longitudinal medical evidence does not show at least a six-month consecutive duration of any of the foregoing symptoms. Moreover, while there are three followups with Lucia Ridlen-Gonzalez, M.D., in mid-to-late

8

2019 wherein she assesses "fatigue, chronic," she similarly documents none of the above symptomology (Exhibit 2F/3-14). Accordingly, the undersigned finds no medically determinable impairment of CFS as required in SSR 14-1p.

(Tr. 91.) The ALJ's explanation is sound and supported by substantial evidence. Consequently, the court cannot upset it. In any event, Seeley has not demonstrated that the ALJ's failure to identify chronic fatigue as a severe impairment constituted a harmful error. In other words, he has not shown that the ALJ failed to consider a symptom attributable to chronic fatigue syndrome that materially affected his ability to work.

As for the ALJ's conclusion that Seeley did not suffer from post-traumatic stress disorder, the ALJ relied on Shields's finding that Seeley did not meet the diagnostic criteria for the disorder. The ALJ concluded, "In the absence of a diagnosis from an acceptable medical source, the undersigned finds no medically determinable PTSD impairment." (Tr. 91); 20 C.F.R. § 416.921.

Shields's conclusion was based on a factual error. He stated that the only event that allegedly triggered Seeley's post-traumatic stress disorder was his diagnosis with chronic inflammatory response syndrome. Because post-traumatic stress disorder requires "[e]xposure to actual or threatened death, serious injury, or sexual violence," a diagnosis of chronic inflammatory response syndrome was insufficient to trigger post-traumatic stress disorder under the diagnostic criteria. (Tr. 739.)

Although his diagnosis with chronic inflammatory response syndrome was the only event Seeley identified in his discussion with Shields—Seeley alleges that was

because Shields moved on without giving him the chance to provide additional information—the record demonstrates that there was a second incident that Seeley attributes as a cause of his post-traumatic stress disorder. On November 18, 2018, Seeley witnessed his father die as a result of a skateboarding accident. (Tr. 273-304.)

Seeley presented to the Appeals Council evidence that another physician had diagnosed him with post-traumatic stress disorder as a result of his father's death, but the Appeals Council rejected the evidence because it did not relate to the period at issue. (Tr. 2.) The report was dated March 26, 2021, and thus came after the ALJ's decision. (Tr. 23-27.) For the same reason, the court is likewise unable to rely on this additional evidence to upset the ALJ's decision. *See Eads v. Sec'y of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). Nor has Seeley argued (much less shown) that this additional evidence merits remand under sentence six of 42 U.S.C. § 405(g).

Even though the ALJ's conclusion regarding Seeley's post-traumatic stress disorder was based on a factual error, the error was harmful only if it affected the ALJ's assessment of Seeley's ability to work. The record indicates that the ALJ considered all of Seeley's alleged symptoms attributable to post-traumatic stress disorder, without regard to their cause. And, in any event, Seeley does not point to any symptom attributable to post-traumatic stress disorder that the ALJ failed to consider.

However, the ALJ's RFC finding contains an obvious error: the ALJ failed to account for all of Seeley's limitations attributable to his chronic inflammatory response

syndrome. Specifically, the ALJ stated, "The claimant's immune condition is particularly severe when exposed to triggers such as mold and warrants precautionary limitations, including limiting the claimant to a reduced range of medium work with postural and environmental limitations/precautions." (Tr. 102.) An additional trigger the ALJ identified was being "around buildings with high humidity/moisture." (Tr. 100.) Yet in assessing Seeley's RFC the only environmental limitations the ALJ identified were, "The claimant must avoid concentrated exposure to noise levels of 4 out of 5 and 5 out of 5 as defined in the DOT and SCO, must avoid concentrated exposure to excessive fumes, odors, dust, gases, and poor ventilation, and must have the option to wear shaded lenses or hat or visor." (Tr. 95.)

None of these limitations account for Seeley's hypersensitivity to mold, high humidity, or moisture. Nor was the issue addressed with the vocational expert (VE). "As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). The court is unable to speculate whether Seeley's hypersensitivity to mold would further erode the jobs available to him, much less whether the limitation would be work preclusive. Consequently, the court must remand this matter. Because all factual issues have not been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion," *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting

*Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)), a direct award of benefits is not appropriate.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that the plaintiff's motion to withdraw his amended brief (ECF No. 20) is **granted**.

Dated at Milwaukee, Wisconsin this 2nd day of September, 2022.

WILLIAM E. DUFFIN
U.S. Magistrate Judge